O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | | |
|---|---|---|
| ISABEL MERCADO, | ) | Case No. EDCV 07-00042-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I.    Factual and Procedural Background**

This is an action for judicial review of the Social Security Commissioner's final decision denying Plaintiff's application for disabled widow's benefits under 42 U.S.C. §§ 402(e), 423. Plaintiff Isabel Mercado is the widow of a wage earner who died fully insured on February 2, 1988. (Administrative Record ("AR") 12). Her prescribed seven-year eligibility period ended January 31, 2006. (AR 12, 21). Plaintiff filed her application for Social Security Widow's Insurance Benefits on July 30, 2003, alleging that she is disabled due to hypertension, a seizure disorder, and a left foot infection. (AR 12, 44).

Plaintiff was born on July 8, 1953, and is currently 54 years old. (AR at 11).  She has a sixth grade education, is illiterate, and is unable to communicate effectively in English. (AR 11).  She claims that her conditions first prevented her from working on May 12, 2002. (AR 55).  Since that date, her only work has been babysitting for her granddaughter for $400 per month. (AR 55-56).

The Social Security Administration denied Plaintiff's application for widow's benefits initially and upon reconsideration. (AR 21, 27). Plaintiff filed a timely request for a hearing, which was held before Administrative Law Judge Larry B. Parker ("the ALJ") on June 13, 2005. (AR 34, 35).  The ALJ was required to decide whether Plaintiff became disabled by way of a physical or mental impairment that (1) prevented her from doing any substantial, gainful work and that (2) lasted twelve straight months or could be expected to last for that time or result in death.  (AR 37).  William M. Kuntz acted as Plaintiff's counsel at the hearing.  (AR 185).

On October 28, 2005, the ALJ issued a decision denying Plaintiff benefits. (AR 18).  The ALJ determined that Plaintiff's impairments are severe and that she has no past relevant work experience, but that her residual functional capacity ("RFC") and vocational profile enable her to perform jobs which exist in significant numbers in the national economy. (AR 12).  The ALJ found that Plaintiff retains the RFC to perform a range of work activities at the medium exertional level. (*Id.*).

The ALJ reviewed Plaintiff's medical history, which included reference to severe tinea pedis (ringworm) in her left foot (now apparently healed), hypertension, seizure-like episodes, headaches, stroke, hypothyroidism, mild depression, and anxiety. (AR 13-16).  The

2

ALJ rejected Plaintiff's allegations as to the nature, severity and functionally limiting effects of her impairments and symptoms. (AR 16). Among the reasons the ALJ provided in support of his rejection of Plaintiff's claims were: (1) Plaintiff's impairments are under control through conservative treatments, (2) physical examinations of Plaintiff were generally unremarkable, (3) there is no evidence that Plaintiff suffers from severe psychological problems, (4) the consultative examiner found no evidence supporting the imposition of exertional restrictions or of severe mental impairments, (5) Plaintiff seems to have recovered from her stroke without functional restrictions, and (6) the evidence does not support a diagnosis of a seizure disorder, and Plaintiff's seizure-like spells do not prevent Plaintiff from extensive activities of daily living. (AR 16-17).

The ALJ decided that Plaintiff is not disabled, applying the framework of Medical-Vocational Guideline Rule 203.18.[1] (AR 17). On the basis of vocational expert testimony, he determined that Plaintiff is capable of working as a production helper (247 local and 34,000 national jobs) or a production assistant (356 local and 236,000 national jobs). (Id.). On this basis, the ALJ determined that Plaintiff is not under a disability as defined by the Social Security Act. (Id.).

Plaintiff filed a timely request for review of the ALJ's decision. The Appeals Council denied review on November 28, 2006. (AR 3).

On January 9, 2007, Plaintiff commenced this action for judicial review, contending that the ALJ: (1) failed to properly consider all of

---

[1] Consistent with the ALJ's finding that Plaintiff has severe impairments but can perform a range of medium work activities, Rule 203.18 falls within the table of the Medical-Vocational Guidelines dedicated to an RFC of "medium work as a result of a severe medically determinable impairment." 20 C.F.R., Part 404, Subpart P, Appdx. 2.

3

the available medical evidence in the record; (2) failed to adequately consider Plaintiff's subjective complaints and improperly assessed Plaintiff's credibility; and (3) erred in relying on defective vocational expert testimony.   The Commissioner disagrees.

## II.   Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## III. Discussion and Analysis

### A.   Consideration of all the Medical Evidence

Plaintiff contends that the ALJ erred by failing to properly

4

consider all of the available medical evidence in the record.  (Joint
Stipulation ("JS") at 3).  Plaintiff specifically argues that the ALJ
failed to properly consider: (1) Plaintiff's fatigue, depression,
anxiety, left-foot problems, headaches, severe hypertension, and
multiple subcortical white matter lesions, which the Court understands
as a complaint that the ALJ failed to adequately develop the record; and
(2) a medical opinion prepared by Dr. George Ricks, one of Plaintiff's
treating physicians. (Joint Stipulation ("JS") at 3-4).  Each contention
is treated in turn.

**1.  Failure to Develop the Record as to Plaintiff's Impairments**

An ALJ's duty to develop the record arises only when the evidence
is ambiguous or the record inadequate for proper evaluation. *Mayes v.
Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  The requirement that
an ALJ obtain additional information (contacting a treating physician,
ordering a consultative examination, etc.) is "triggered only when the
evidence from the treating medical source is inadequate" to make a
determination or decision as to whether the claimant is disabled.
*Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).  In social
security cases, the ALJ has a special duty to develop the record fully
and fairly and to ensure that a claimant's interests are considered,
even when that claimant is represented by counsel. *Massanari*, 276 F.3d
at 459.

Plaintiff claims that the ALJ should have developed the record on
the soft tissue swelling in her left foot, as indicated in an x-ray of
January 7, 2003. (JS at 3, AR at 140).  The ALJ noted that Plaintiff's
left foot exhibited swelling and tinea pedis at the January 7, 2003
examination. (AR at 12).  He also noted that Plaintiff was treated for
the tinea pedis on September 5, 2003.  Plaintiff was apparently treated

successfully, as complaints about foot swelling do not appear again in her medical history. (AR at 16).  Plaintiff points to no evidence in the record indicating that her foot maladies plagued her on an ongoing basis or even for the twelve months required to qualify for a disability.  42 U.S.C. § 423(d)(1)(A).  The ALJ was under no obligation to further develop an already clear and complete record as to Plaintiff's foot problems.

Plaintiff next asserts that additional information was required concerning the combination of Plaintiff's hypertension and white matter lesions found on Plaintiff's brain. (JS at 3-4).  The record is replete with hypertension diagnoses and tests revealing minor subcortical abnormalities. (AR at 149-150, 153, 163, 169, 176, 180).  The ALJ noted the evidence of hypertension in his findings and in his narrative of Plaintiff's medical history. (AR at 12-17).  He further alluded to Plaintiff's subcortical abnormalities. (AR at 13).  Plaintiff challenges the ALJ's failure to seek additional evidence relating to the subcortical abnormalities.  However, the only evidence that suggests any impairment stemming from the subcortical abnormalities – a radiologist's opinion that migraines and vascular disease could be possible consequences of the white matter lesions (AR at 150) – are not demonstrably related to Plaintiff's claimed disabilities, namely seizure disorder, hypertension and a left foot infection. (AR at 150).  Consequently, there was no relevant ambiguity or lack of complete development as to Plaintiff's subcortical abnormalities.

**2.   Failure to Properly Consider the Medical Opinion of Dr. Ricks**

It is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine credibility. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1989).  The ALJ determines which medical opinions should be given the most weight in light of the general rule in this circuit that, among the three types of physicians — (1) treating physicians, i.e., those who treat the claimant; (2) examining physicians, i.e., those who examine but do not treat; and (3) non-examining physicians, i.e., those who neither examine nor treat — the most weight should be given to the opinion of a treating source. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  An ALJ should accordingly give deference to a treating physician's opinion as to the nature and severity of an impairment if it is well supported and not inconsistent with other substantial evidence.  SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996).  Opinions of a treating physician may be rejected where there is a conflicting opinion and the ALJ sets forth specific, legitimate reasons based on substantial evidence.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").

Plaintiff contends that the ALJ failed to properly consider a medical opinion prepared by Dr. Ricks regarding Plaintiff's mental and emotional ability to work.  The opinion is a standardized form with check-boxes and short explanatory sections that Plaintiff faxed to the ALJ on the day of her hearing.  The ALJ provided several reasons for discounting this opinion of Dr. Ricks, including that it: (1) is undated and unsigned (on account of its final signature page not being delivered

to the ALJ),[2] (2) is set forth on a form supplied by Plaintiff's attorney, (3) is unaccompanied by any clinical or laboratory studies, (4) is unsupported by any treating records by Dr. Ricks, (5) is controverted by the opinions of the state agency and the consultative psychiatrist, and (6) is consistent the ALJ's own findings regarding Plaintiff's limitations. (AR at 15).

The ALJ's decision to discount Dr. Ricks' opinion was supported by specific, legitimate reasons based on substantial evidence. *Thomas*, 278 F.3d at 957; *Andrews*, 53 F.3d at 1041. For example, the ALJ noted that Dr. Ricks' opinion was consistent with the ALJ's own findings regarding Plaintiff's limitations. Dr. Ricks' opinion does not state or imply that Plaintiff would be completely unable to work. Dr. Ricks' check-box evaluations of Plaintiff's mental and emotional capability are split between the categories of "fair" and "good." Further, Dr. Ricks' short explanatory answers are consistent with the ALJ's findings – that Plaintiff suffers from hypertension, anxiety and depression – and stop short of suggesting that Plaintiff can not function in any work environment. This and the other reasons provided by the ALJ are sufficiently specific and based on substantial evidence to support the ALJ's discounting of Dr. Ricks' opinion.

**B.    Subjective Complaints of Pain and Credibility Determination**

Plaintiff contends that the ALJ failed to adequately consider her subjective complaints of pain and improperly assessed her credibility. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical

---

[2]    Plaintiff has since demonstrated that the opinion is in fact dated and signed.  (JS at 4-5).

8

evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).   To the extent that an individual's claims of functional limitations and restrictions due to the alleged pain are reasonably consistent with the objective medical evidence and other evidence in the case, the claimant's allegations will be credited.   SSR 96-7p, 1996 WL 374186, at * 2 (S.S.A. July 2, 1996) (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).   Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting a claimant's complaints. *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Social Security Regulation 96-7p identifies the types of evidence that may be used, in addition to the objective medical evidence, to assess a claimant's credibility.[3]   For example, an ALJ may discredit a claimant's testimony if she engages in daily activities that are inconsistent with her allegations. *Bunnell*, 947 F.2d at 346.   "Another relevant factor may be 'unexplained or inadequately explained, failure

_____

[3]   SSR 96-7p lists seven types of evidence:
1.   The individual's daily activities;
2.   The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.   Factors that precipitate and aggravate the symptoms;
4.   The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.   Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.   Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7.   Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at * 3.

to seek treatment or follow a prescribed course of treatment.'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  The ALJ may also use "ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (internal quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)).

The ALJ "reject[ed] the claimant's allegations of the nature, severity, and functionally limiting effects of her impairments and symptoms." (AR at 16).   The ALJ offered ten specific – though occasionally repetitive – reasons for its credibility determination, each of which was based on evidence from Plaintiff's medical record. (AR at 16-17).  The ALJ noted that Plaintiff's conditions were largely under control and that her physical examinations were unremarkable – making her complaints completely inconsistent with the objective evidence. Substantial evidence supported the ALJ's determination to discount Plaintiff's subjective complaints of debilitating pain.

### C.   Reliance on Vocational Expert Testimony

Plaintiff finally contends that the ALJ relied upon defective vocational expert testimony on the availability of jobs for someone with her RFC and vocational profile. (JS at 17).  During the hearing, a vocational expert testified that a person with Plaintiff's profile could work as a production helper and a production assistant. (AR at 202). The vocational expert testified that there were 247 production helper jobs in San Bernadino County with 34,000 nationally and 356 production

1  assistant jobs in San Bernadino County with 236,000 nationally. (*Id.*).
2  That totals 603 local positions.  Plaintiff's mistaken belief that these
3  figures related to Southern California rather than to San Bernadino
4  County renders irrelevant her "these numbers simply do not add up"
5  argument. (JS at 17).[4]  But her argument that the regional numbers of
6  jobs are insignificant and that the ALJ erred in relying on them must be
7  fully considered. (JS at 17).

8      A person is not disabled if she can "engage in any other kind of
9  substantial gainful work which exists in the national economy,
10  regardless of whether such work exists in the immediate area in which
11  [she] lives, or whether a specific job vacancy exists for [her], or
12  whether [she] would be hired if [she] applied for work."  42 U.S.C. §
13  423(d)(2)(A).  Work in the "national economy" means "work which exists
14  in significant numbers either in the region where such individual lives
15  or in several regions of the country." *Id*.  The Ninth Circuit has never
16  clearly established the minimum number of jobs necessary to constitute
17  a "significant number."  *Barker v. Secretary of Health and Human*
18  *Services*, 882 F.2d 1474, 1478 (9th Cir. 1989).  Defendant suggests that
19  the Court consider the number of jobs identified by the vocational
20  expert in the context of San Bernardino County's relatively lower
21  population than adj[5]acent areas such as Los Angeles.  (JS at 18).  But
22  that manner of ratio analysis was rejected in the very case that
23  Defendant cites to support his position. *Barker*, 882 F.2d at 1479.
24  //

25  ─────────────
26      [4] Plaintiff cites to no authority in support of this proposition.

27      [5] A district court in dicta speculated that 363 regional jobs would
"raise serious doubts" as to whether significant numbers of jobs exist.
28  *Coletta v. Massanari*, 163 F.Supp.2d 1101, 1106 (N.D. Cal. 2001).

11

In any case, the vocational expert's testimony that over 600 appropriate positions exist in San Bernardino county constitutes substantial evidence to support the ALJ's finding that a significant number of jobs exist.   The Ninth Circuit has consistently found that more than 1,000 locally or regionally available positions constitute a significant number of jobs.  *See Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *Barker*, 882 F.2d at 1478-79.  But it has not set a floor for the finding of a significant number of jobs.  At least one district court within the Ninth Circuit, as well as the Eleventh Circuit, have found less than 600 jobs to be significant.   *Uravitch v. Heckler,* 1986 U.S. Dist. LEXIS 25985 (D. Ariz.) (500-600 mechanic jobs in Maricopa County, 60-75% of which would require experience beyond that possessed by claimant, constitute significant number); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 small appliance repair jobs in "area" constitute significant number).  Against this backdrop, there was substantial evidence in support of the finding that there are significant numbers of jobs in the national economy in which Plaintiff is capable of working.

**IV.   Conclusion**

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner be affirmed and this case dismissed with prejudice.

DATED: October 24, 2007

_____
MARC L. GOLDMAN
United States Magistrate Judge

12